UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HARVEY FAIRLEY #150010,                          Case No. 2:19-cv-46

       Plaintiff,                                Hon. Robert J. Jonker
                                                 Chief U.S. District Judge

    v.

AMY WESTCOMB,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This is a civil rights action brought by state prisoner Harvey Fairley pursuant to 42 U.S.C. § 1983.   Fairley alleges that Amy Westcomb, a physician's assistant (PA) at Alger Correctional Facility, was deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights, by failing to comply with directions from Fairley's other physician and PA, namely his surgeon, Dr. Blotter, and PA Asmus.   Fairly says Westcomb's indifference resulted in increased pain and suffering and an infection in his surgically repaired ankle injury.

Defendant Westcomb has filed a motion for summary judgment. (ECF No. 24.) I respectfully recommend that the Court grant summary judgment in favor of Defendant Westcomb with regards to Fairley's Eighth Amendment claim and decline to exercise supplemental jurisdiction over Fairley's state law claims.

The undersigned has reviewed the materials filed by the parties, including the medical records, and has found that Fairley has failed to present verifying medical

evidence to establish that PA Westcomb acted with deliberate indifference or otherwise treated him in a way that violated his Constitutional rights.  It is respectfully recommended that Court find that the record reflects no genuine issue of material fact that could suggest PA Westcomb acted with deliberate indifference to Fairley's serious medical needs.

## II. Factual Allegations

Fairley claims that, while he was confined at Alger Correctional Facility ("LMF"), his Eighth Amendment right to medical care was denied by PA Westcomb. (ECF No. 1.)   On June 6, 2018, Fairley suffered a serious ankle fracture in the prison yard at LMF.  (*Id.*)   Nurses at LMF treated the injury with a splint, ice, and ibuprofen, then contacted PA Westcomb and had Fairley transported to the emergency room at Munising Memorial Hospital for emergency treatment and x-ray. (ECF No. 24-2, PageID.99.)   At Munising Memorial Hospital, Fairley was treated by Dr. Jan Prokosch and was discharged with instructions to use a splint and crutches, ice and elevate his ankle, take Motrin (800mg) with food, and to "[follow up] with Ortho (MQT?) ASAP." (ECF 24-3, PageID.225.) These discharge instructions also included a line directing that Fairley "take Norco [unintelligible] to sleep tonight," but these directions were crossed out at some point. (*Id.*)

Upon Fairley's return to LMF, PA Westcomb directed that Fairley be given Tylenol-Codeine No. 4 (300mg-60mg) for his pain, which the RN on site, Paul Zelenak, administered.   (ECF 24-2, PageID.101-102.)   Medical personnel at LMF followed up with Fairley the next day (June 7), arranged for an orthopedic consult, and directed

Fairley to take "one or two" Ultram, an Opiate-based pain killer, every eight hours. (*Id.*, PageID.104.)   Fairley met with Dr. Blotter on June 12, 2015, after which PA Westcomb reviewed the consultation notes and facilitated arrangements for Fairley's surgery. (*Id.*, PageID108-110.)   On June 15, 2018, Dr. Blotter performed orthopedic surgery to repair Fairley's ankle.   (*Id.*, PageID.114.)   The hospital discharge instructions issued for Fairley indicated that he should "ice and elevate" his ankle intermittently for at least three days, that he should not bear any weight on his operative foot, that he should leave his dressing in place until his follow up visit, scheduled for June 29, 2018, and that he had been prescribed Hydrocodone-Acetaminophen ("Norco") for his pain, noting that "the goal of pain medication is to reduce [a patient's] pain and make [the patient] more comfortable" and that "it may not completely relieve all discomfort."   (*Id.*, PageID.116.)

Fairley claims that PA Westcomb was deliberately indifferent to his medical needs by failing to prescribe him the "Opiate-based" pain killer Norco, as directed by Dr. Blotter. (ECF 25-1, PageID.269.) On June 18, 2018, PA Westcomb reviewed Fairley's discharge instructions and increased his Ultram regimen in response to his extreme pain, advised that he take ibuprofen as well, and otherwise issued instructions that conform to the discharge instructions. (ECF 24-2, PageID.119.)   On June 20, 2018, Fairley met with Dr. George Bonefeld and reported that his pain control was inadequate. (*Id.*, PageID.125.) Dr. Bonefled noted that they would "try the Norco ordered by Dr. Blotter" and prescribed Norco every six hours, to stop on June 23, 2018. (*Id.*) On June 23, Registered Nurse (RN) Patrick Gasperich notes that

3

Fairley was "out of Norco" and that Nurse Gasperich consulted with PA Westcomb, who ordered Ultram. (*Id.*, PageID.126.)  On June 26, 2018, Fairley was evaluated again by PA Westcomb, who increased his dose of Ultram from one 50 mg tablet four times a day to two tablets four times a day. (*Id.* PageID.130.)

Fairley further alleges that PA Westcomb was deliberately indifferent by failing to change his ankle dressing every day.  (ECF No. 25-1, PageID.269.) Fairley went for his follow up orthopedic evaluation at the Upper Peninsula Medical Center's Advanced Center for Orthopedics and Plastic Surgery on June 28, 2018 and was examined by Victoria N. Asmus, PA-C. (*Id.* PageID.132.) PA Asmus provided Fairley with a "Cam boot" to be worn at all times (except hygiene), and ordered daily wound checks and dressing changes due to "some concerns with [the] appearance of the patient's incision."  (*Id.*)   Later that day, PA Westcomb updated Fairley's chart to conform his treatment instructions with those issued by PA Asmus at the consultation and ordered crutches, a wheelchair, and antibiotics.  (*Id.*, PageID.134.) On June 29, 2018, RN John Crane checked Fairley's incision, changed his dressing, and updated PA Westcomb on the state of the wound, noting that it was not infected and that the incision was "closed and approximated and intact" and that there appeared to be "a stasis ulcer near [the] incision 2cm by 2cm."  (*Id.*, PageID.138.) PA Westcomb directed that Fairley's wound be dressed with a different kind of dressing, an "aquacel foam dressing," which would, by design, not need to be changed until July 2, 2018, and RN Crane applied the foam dressing on June 29. (*Id.*, PageID.139.)   On July 2, RN Crane changed Fairley's dressing, noted that the

"wound [was] getting larger," and set up an evaluation for the next day. (*Id.*, PageID.142.)   On July 3, nurse practitioner Joanna Samuelson examined Fairley and noted that his boot casing was strapped too tight.  (*Id.*, PageID.145.)   On July 5, PA Westcomb examined Fairley, noted that the incision was healing well, that there was "very slight s[w]elling," that his Ultram would be tapered off, and that they would continue to use the aquacel foam dressing to be changed twice per week.   (*Id.*, PageID.147.)   On July 24, 2018, Fairley presented for a follow up visit with Dr. Blotter, who noted that "it does not look like the surgical incision is infected at all and that looks to be well healed."   (*Id.*, PageID.153.)

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Eighth Amendment

Fairley alleges that PA Amy Westcomb was deliberately indifferent to his serious medical needs by failing to prescribe Norco, as recommended by Dr. Blotter, and by failing to change his wound dressing daily, as recommended by PA Asmus. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.   *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals

6

elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's **failure to treat a condition adequately**, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The

subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721

(6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference.   Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness."   This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.

> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."   A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful.   A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailer, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals."   That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical

treatment states a violation of the Eighth Amendment.   *Estelle*, 429 U.S. at 105.   As

the Supreme Court explained:

8

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.    Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.    Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.    In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.   *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."   *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).   If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."   *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006);

9

*Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).    He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The record establishes that Fairley received extensive post-operative medical treatment from PA Westcomb and other medical personnel. Fairley was evaluated often, including whenever he requested treatment.   When he indicated that he was in too much pain, PA Westcomb ordered painkillers. When Fairley's wound was vulnerable to infection, PA Westcomb ordered antibiotics and had Fairley's wound checked and his dressing changed regularly.   Fairley's claims that PA Westcomb's prescription of Ultram in place of Norco unnecessarily contributed to his suffering, and that PA Westcomb's use of aquacel foam dressing to be changed twice a week rather than the standard dressing to be changed daily "exacerbat[ed] [his] injuries." (ECF No. 25-1, PageID.269.) These are allegations of inadequate medical care, and, as such, Fairley must place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment in order to prove the objective component of his claim.   Fairley offers no such evidence. He appears to rely on PA

Westcomb's deviation from the instructions of Dr. Blotter and PA Asmus, but the medical records suggest that Fairley's wound did not become infected as a result of PA Westcomb's choice of wound dressing.

The subjective component of Fairley's claim requires that he show PA Westcomb not only provided demonstratively inadequate care, but also that she did so out of deliberate indifference to his needs (i.e., with a sufficiently culpable state of mind equal to criminal recklessness). The record reveals that PA Westcomb responded to Fairley's needs, complaints, and pains by examining his injury and prescribing medication and instructions designed to alleviate his symptoms, prevent an infection, and support his recovery. There is no evidence in the record to suggest prescribing Ultram instead of Norco or using an aquacel foam dressing to be changed twice per week rather than daily posed a substantial risk of harm to Fairley. In addition, there are no facts in the record that suggest PA Westcomb was aware of and disregarded any such risk. Fairley received frequent medical support from PA Westcomb and other medical personnel throughout the period between his surgery and his transfer to a different facility. Based on the facts in the record, viewed in a light most favorable to Fairley, no reasonable jury could find that PA Westcomb responded recklessly to Fairley's medical needs.

### V. State Law Claims

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Plaintiff, however, seeks to invoke this Court's supplemental

jurisdiction over state-law claims.   In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."   *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).   Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.   *Id.*   Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, Fairley's allegations that PA Westcomb was negligent and intentionally inflicted emotional distress are better left to State courts.

## VI. Recommendation

It is respectfully recommended that the Court grant Defendant Westcomb's motion for summary judgment with regards to Plaintiff Fairley's Eighth Amendment claim and decline to exercise supplemental jurisdiction over the state law claims.

Dated:    June 26, 2020                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U.S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).